

**ENTERED**
**06/26/2009**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| IN RE: § | |
| ZOHOURI GROUP SOUTH PADRE, L.P. § | CASE NO: 06-10875 |
| Debtor(s) § | |
| § | CHAPTER 7 |

MEMORANDUM OPINION AND ORDER GRANTING
AMTRUST BANK AND CAMERON ACQUISITIONS,
INC.'S MOTION TO DISMISS THIRD PARTY COMPLAINT
FILED BY JOHN MCMAHAN AND ROY MARSH

On this day came on for consideration the Motion to Dismiss the Third Party Complaint (the "Complaint") filed by AmTrust Bank ("AmTrust") and Cameron Acquisitions, Inc. ("Cameron"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The Court having heard the arguments of counsel, finds as follows:

**Background**

1.     An involuntary Chapter 7 bankruptcy proceeding was filed against Zohouri Group South Padre, L.P. ("Debtor"), on December 29, 2006 (the "Petition Date"). An Order for Relief was entered on January 31, 2007, and Michael B. Schmidt (the "Trustee") was elected by the creditors to serve as Trustee and an Order was entered approving that election on March 2, 2007. The principal asset of the Chapter 7 estate was approximately 729 acres of undeveloped land located on South Padre Island, Texas (the "Property").  As of the Petition Date, AmTrust held a first priority lien on the entire Property, pursuant to a $35,500,000 loan and Deed of Trust executed in favor of AmTrust by the Debtor on August 18, 2005, (the "DOT").

2. Following the Petition Date, AmTrust agreed to forebear from asserting its rights against the Property, in an effort to allow the Chapter 7 Trustee (the "Trustee") to market and sell the Property. After extensive marketing, negotiations and sale attempts, on June 28, 2007, the Trustee filed his Amended Motion and Notice of Trustee's Intent to Sell Property Free and Clear of Liens, Claims and Interest to the Stalking Horse [Defendants Marsh and McMahan, the "M&M Parties"] of the Property (the "Sales Motion").

3. The Sales Motion sought approval and establishment of an auction bid procedure and breakup fee. This Court entered an order setting a hearing on the Sales Motion and establishing the bidding procedure with overbids of at least $300,000 more than the M&M, the stalking horse's, offer of $38 million and on terms at least as favorable as those set forth in M&M's contract.

4. Pursuant to this Court's Order, the first auction was held on July 24, 2007, in the presence of, and presided over by, this Court. Six qualified bidders were present, including M&M. A bidder other than M&M was the successful bidder, but did not take the necessary steps to close the sale. On August 7, 2007, this Court entered its Order Resetting New Auction Hearing and another auction was set for August 14, 2007.

5. M&M was the only bidder who participated in the second auction held on August 14, 2007. M&M accepted the new bid price of $40.55 million set by this Court. On that same day, this Court entered its Order Approving High Bidder at New Auction.

6. The August 14, 2007, Order required M&M to deposit additional earnest money in the amount of $350,000 with Security Title company and close the sale by Novembe14, 2007. The total earnest money in the amount of $500,000 was non-

refundable after 30 days. The Order was amended to correct language that is not relevant to the issue before the Court.

7. M&M did not close the sale by November 14, 2007.

8. On November 29, 2007, the Trustee and M&M entered into a Letter Agreement – Modification and Extension of Earnest Money Contract (the "Letter Agreement"). The Letter Agreement provided for release of the $500,000 earnest money to the Trustee and required that M&M deposit an additional $1 million in earnest money (non-refundable) by January 7, 2008, and close the sale by January 16, 2008. The purchase price was increased to $40,931,058.79. By its terms the Letter Agreement was made a binding contract.

9. On December 10, 2007, this Court signed an Order Approving Extension and Modification, which incorporated the terms of the Letter Agreement described above. M&M did not pay the additional $1 million earnest money by January 7, 2008.

10. The Trustee entered into another modification agreement with M&M, which is set forth in this Court's Agreed Order Resolving Motions, entered on February 4, 2008. The Order further modified this Court's December 10, 2007, Order and provided that AmTrust would receive an additional $50,000. The Order further found that M&M failed to pay the additional $1 million earnest by the required date and failed to close the sale by January 16, 2008. The Court terminated the contract but retained and reserved all the Trustee's rights and remedies against M&M. The Order further authorized the Trustee to sell the Property to M&M and other investors, required a non-refundable payment to the Trustee of $1.5 million by February 15, 2008, and closing by March 1, 2008.

11. M&M did not deposit the $1.5 million and did not close the sale by March 1, 2008.

12. In yet another attempt to complete the sale, the parties appeared before this Court at a hearing held on March 3, 2008, at which time they announced another agreement. The agreement modified the Agreed Order entered into on February 4, 2008. This Court entered its Order Granting Motion for Modification to Agreed Order on March 3, 2008. The Order authorized the Trustee to sell the Property to M&M and other investors for $42,500,000. The Order required the payment of $1 million to the Trustee by March 3, 2008, with $900,000 going to AmTrust and $100,000 to the Trustee. An additional payment of $1 million was to follow, with the same distribution. The payments were required to delay AmTrust's foreclosure until April 1, 2008, for the first payment, and until May, 2008, for the second payment.

13. M&M did not make any of the payments required by the March 3, 2008, Order.

14. Following M&M's default on payments, AmTrust conveyed its interest in the Property to Cameron and Cameron foreclosed on March, 2008.

15. The Trustee filed his Complaint against M&M on December 11, 2008, seeking damages against M&M for breach of contract and contempt of court. The Trustee then dismissed the adversary proceeding and filed his Trustee's Pleading, in which he again sought damages for breach of contract and contempt of court, but as a contested matter with the adversary rules invoked.

16. M&M filed their Original Answer and Affirmative Defenses to Trustee's Pleading and Motion for Contempt and Third Party Complaint on January 7, 2009.

17. AmTrust and Cameron filed their Motion to Dismiss on March 6, 2009. A hearing was held on April 21, 2009, and the matter was taken under advisement.

### DISCUSSION

18. AmTrust and Cameron's Motion to Dismiss is based on Rule 12(b)(6), F.R.C.P., made applicable via Rule 7012(b), F.R.Bankr. Pro. A court's review of the sufficiency of a complaint to determine the validity of a Rul 12(b)(6) motion focuses on the face of the pleadings to determine whether a cause of action is stated or whether jurisdiction exists. *Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).

19. In passing on a motion to dismiss, whether on grounds of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed most favorably on behalf of the pleader. *Id*. A court should dismiss a suit under Rule 12(b)(6) only if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Connelly v. Gibson*, 355 U.S. 41, 45-46 (1957).

20. To avoid dismissal based on Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). The Complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "[We] accept [] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Sonnier v. State Farm Mut. Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007).

21. While a plaintiff's allegations must generally be taken as true when ruling on a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief

above the speculative level, … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 554. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

22.  "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery … or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." 3 Wright & Miller, *FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D* § 1216 AT 156-159. "[A] statement of facts that merely creates a suspicion that the pleader might have a right of action " is insufficient. *Id.* at 163 "Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief…." 2A MOORE'S FEDERAL PRACTICE ¶ 12.07 [2.-5] at 12-91; *see also Rios v. City of Del Rio, Tex.* 444 F.3d 417, 420-21 (5th Cir. 2006). The Court is not required to "conjure up unplead allegations or construe elaborately arcane scripts to" save a complaint. *Id.* at 421, *Gooley v. Mobil Oil Cop.,* 851 F.2d 513, 514 (1st Cir. 1988). The Court may dismiss a complaint "when, on the basis of a dispositive issue of law, non construction of the factual allegations will support the cause of action." *Marshall County Bd. Of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

23.  The M&M Parties failed to state a claim for relief that is "plausible on its face," and that is "[definite] enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 554; *Sonnier,* 509 F.3d at 675. Instead, the Complaint contains "conclusory allegations [and] legal conclusions masquerading as factual conclusions"

which "will not suffice to prevent [the granting of] a motion to dismiss." *Fernandez-Montez,* 987 F.2d at 284.

24.     The Court's own docket and orders entered therein demonstrate that the M&M parties claims should be dismissed. Any injury caused by the actions of AmTrust accrues to the estate, not to the M&M Parties.   The Trustee waived all claims it had against AmTrust in this Court's February 1, 2008, Agreed Order Resolving Motions, filed in this case at Docket No. 418, which was also made expressly binding on the M&M Parties.  Further, the M&M Parties cannot maintain this cause of action because they previously waived all prospective "reliance" arguments by signing a contract to purchase the Property "as is" without warranty of title or otherwise.  The M&M Parties did not rely on any of AmTrust's representations when negotiating for the purchase of the Property, because (1) they negotiated with the Trustee, not AmTrust and (2) they waived the right to enforce any warranties in their June, 2007, contract, choosing instead to purchase the Property "as is."

25.     A plaintiff must plead fraud with particularity before it may recover on that cause of action.  *Brunig v. Clark,* 560 F.3d 292, 296 (5th Cir. 2009). Specifically, and aside from pleading all other elements with particularity, the Complaint must allege, "with particularity [,] facts giving rise to a strong inference that [AmTrust and Cameron] acted with the required state of mind"---here at least "severe recklessness" –to perpetuate fraud upon the M&M Parties and/or the Trustee. *Id.*  The Complaint fails to allege such a state of mind with particularity, showing its conclusory factual assertions are insufficient to state a claim that will survive dismissal.  Because the Complaint does

not allege its fraud claims with particularity, or support them with an operative set of viable facts, they should be dismissed.

26. To maintain a cause of action for tortuous interference with contract, the M&M Parties must allege "(1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) the act was a proximate cause of the Plaintiff's damage, and (4) actual damage or loss occurred." *Ray Mart, Inc. v. Stock Bldg. Supply of Tex. L.P.,* 302 Fed.Appx. 232, 2008 U.S. App. LEXIS 22882, at *20 (5th Cir. 2008) (*quoting Holloway v. Skinner,* 898 S.W.2d 793, 795-96 (Tex. 1995)). M&M could have, but did not make their contract contingent on performance by third parties. The allegations contained in the Complaint are wholly inadequate to maintain a cause of action based on tortuous interference with contract and should be dismissed.

27. The Complaint also fails to support factually its conspiracy claim in a manner sufficient to avoid dismissal. A party can be found liable for civil conspiracy if it can be proven that the party "with others, proceeds in a tortious manner, which is to say, that the defendant had the intention of committing a tort or merely proceeding in a negligent manner." *Hawkins v. Upjohn Co.*, 890 F.Supp. 609, 612 (E.D. Tex. 1994); *Rogers v. R.J. Reynolds Tobacco Co.,* 761 S.W.2d 788, 796 (Tex. App. – Beaumont 1988, no writ). Here, the M&M Parties failed to support factually any allegation that would constitute a conspiracy charge and the claim should be dismissed.

28. AmTrust and Cameron lacked privity with all parties. Throughout the pendency of this case, AmTrust acted solely as a secured lender and was never a party to any agreement reached between the Trustee, the M&M Parties, the broker chosen by the

Trustee, or any other party-in-interest in this case. Cameron was not formed until the end of January, 2008, making its participation in the majority of this case impossible, and similarly never became a party to any agreement entered into by any party in this case. Neither AmTrust nor Cameron were parties to any contract entered into by the M&M Parties and/or the Trustee.

29. Even to the extent the allegations contained the Complaint are viewed as true, the M&M Parties may not recover against either AmTrust or Cameron, because they admit that it was impossible for them to perform under the terms of the purchase contract. Specifically, in paragraph twenty-four (24) of the Complaint, the M&M Parties state that "M&M's purchasers were unable to come up with their financing and M&M requested an extension since they were unable to close." Complaint, at ¶24. Thus, while the Complaint attempts to make much of alleged misrepresentations made by AmTrust— with serious allegations of fraud, negligent misrepresentation, tortious interference, and conspiracy -- the M&M Parties admit they were unable to close on the purchase of the Property because neither they, nor their alleged purchaser, could come up with the funds to do so. Where the M&M Parties admit the impossibility of their closing the purchase of the Property was not due to actions taken, or representations made by AmTrust or Cameron, the Complaint should be dismissed for failure to state a claim.

## CONCLUSION

Taking all of the Complaint's allegations as true, it fails to state a claim upon which relief can be granted, and for the reasons stated above, all causes of action should be dismissed.

It is therefore ORDERED that the Third Party Complaint filed by John McCahan & Roy Marsh against AmTrust Bank and Cameron Acquisitions, Inc. is hereby DISMISSED for failure to state a claim upon which relief can be granted.

Dated: 06/26/2009

_____
RICHARD S. SCHMIDT
United States Bankruptcy Judge